6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
4/25/2022 9:12 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Miriam Davila

STATE OF NEW MEXICO
COUNTY OF LUNA
SIXTH JUDICIAL DISTRICT COURT

GREG THOMAS,

    Plaintiff,

vs.  No. D-608-CV-2019-00410

FABIAN CHAYREZ,
BOARD OF COUNTY COMMISSIONERS
OF LUNA COUNTY, and
CORRHEALTH, PROFESSIONAL LIMITED
LIABILITY COMPANY,

    Defendants.

### SECOND AMENDED COMPLAINT FOR NEGLIGENCE, CONSTITUTIONAL VIOLATIONS AND DAMAGES

    Plaintiff Greg Thomas, by and through his counsel, Law Offices of Marshall J. Ray, LLC (Marshall J. Ray) and Justine Fox-Young, P.C. (Justine Fox-Young), hereby brings this complaint for damages for negligence, claims pursuant to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 *et seq*, violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and state common law. In support of this complaint, Plaintiff alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action.

2. Venue is proper pursuant to NMSA 1978, § 38-3-2, based on the claim being asserted against Defendant Board of County Commissioners of Luna County ("Defendant

**Exhibit A**

Board"). Venue in this district is also appropriate under NMSA 1978 § 38-3-1(A) because the cause of action originated in Luna County, New Mexico.

## II.     PARTIES

3. Plaintiff Greg Thomas was a detainee at the Luna County Detention Center ("LCDC") at all relevant times.

4. Defendant Board is a local governmental entity that owns and operates LCDC and employs Defendants Chayrez others who committed the acts complained of herein. At all material times, Defendant Board acted through its employees and agents and is responsible for their acts and omissions under the doctrine of *respondeat superior*. As a county detention facility, LCDC contained buildings, machinery, equipment, and furnishings operated and maintained by public employees within the meaning of Section 41-4-6 NMSA 1978. LCDC also contained a medical unit which operated as an infirmary, clinic, or like facility within the meaning of Section 41-4-9 NMSA 1978. LCDC was staffed by public employees who fall under the statutory definition of "law enforcement officers" in Section 41-4-12 NMSA 1978. At all material times, the Board contracted with Defendant CorrHealth to fulfill the County's mandatory governmental function of providing health care services to individuals held in custody at LCDC.

5. Defendant Fabian Chayrez was a correctional officer at LCDC at the time Plaintiff was incarcerated. At all material times, Defendant Chayrez was acting under color of state law within the scope of his duties and employment as a public employee of Defendant Board. Defendant Chayrez was employed as a law enforcement officer within the meaning of the waiver of immunity in Section 41-4-12 of the NMTCA, as amended.

6. Defendant Corrhealth, Professional Limited Liability Company ("Corrhealth") is a foreign limited liability company, headquartered in Texas and was the inmate healthcare provider

for Defendant Board at all material times. At all material times, CorrHealth acted through its owners, officers, managers, employees, and agents, and is responsible for their acts and omissions under the doctrine of *respondeat superior*. At all material times, CorrHealth employed, contracted, and exercised direct supervisory control over the employees who treated Plaintiff and who in so doing were acting under color of state law within the scope of their duties and employment as agents of CorrHealth.

### III.   FACTS

7. On April 26, 2019, Plaintiff Greg Thomas was driving back home to Silver City, New Mexico from the Gathering of Nations Native American pow-wow in Albuquerque along with his assistance dog.

8. Plaintiff was wearing Navajo jewelry.

9. Plaintiff was stopped by a New Mexico State Police officer for speeding in or around Truth or Consequences ("T or C"). The officer discovered an old misdemeanor warrant out of Pennsylvania and opted to arrest Plaintiff on that warrant.

10. At the time Plaintiff relied on a prosthetic left leg due to an amputation approximately 30 years prior and also suffers from significant back and other orthopedic pain due to prior injuries and surgeries.

11. Plaintiff also suffered from Hashimoto's thyroiditis and had also been diagnosed with spinal stenosis and chronic pain syndrome.

12. Plaintiff, who worked as a building contractor for many years, also had a titanium right hip.

13. At the time of his arrest, Plaintiff was prescribed Synthroid for his thyroiditis, 60 milligrams of morphine extended release every eight hours and Percocet for pain, and hydromorphone for breakthrough pain.

14. Because he was driving a long distance, Plaintiff had not taken his pain medications although he had them with him in the car.

15. At the time of his arrest, Plaintiff was suffering from a lot of pain because he had been on his feet all day at the pow-wow and was stumbling as he tried to walk on the roadside, leaving the arresting officer concerned that he. was too sick to be incarcerated.

16. Plaintiff contacted a friend to pick up his assistance dog, from whom he had not been separated from for three years, and the officer took Plaintiff to the Sierra Vista hospital in Truth or Consequences for assessment.

17. At the hospital Plaintiff was examined by Dr. Mark Jackson in the Emergency Room.

18. Dr. Jackson assessed Plaintiff's condition and documented that Plaintiff should not be without his medication for more than 72 hours.

19. Dr. Jackson noted that Plaintiff "ha[d] multiple medical problems that are chronic, to include chronic pain issues for which he is on daily opioids, from which he will begin to withdraw in 2-3 days. An attempt should be made within the next 48 hours to ascertain those medications and obtain patient's supply or have them re-prescribed."

20. Dr. Jackson discharged Plaintiff, completed a "jail clearance form" indicating that Plaintiff's medical condition did not require hospitalization, and gave Plaintiff instructions to return to the ER if his condition worsened.

21. Plaintiff's medications were left in his vehicle and were never retrieved by law enforcement or by County or Corrhealth personnel after the visit to the hospital in T or C.

22. On April 27, 2020, Plaintiff was screened for medical issues at the Sierra County Detention Center ("SCDC") in T or C, where he complained of nausea and back pain and reported that he had was hypothyroid and had a herniated disc in his back, a titanium hip and a left leg prosthesis due to an amputation above the knee.

23. For unknown reasons, Plaintiff was not held in custody at SCDC but instead was taken to LCDC.
24. At LCDC, he again reported his diagnoses.
25. As soon as Plaintiff was placed in a booking cell at LCDC, Defendant Chayrez approached Plaintiff as part of the booking process, and Plaintiff told Defendant Chayrez that the prosthesis needed to be charged.
26. Defendant Chayrez approached Plaintiff and took his prosthetic leg.
27. Defendant Chayrez also yelled epithets at Plaintiff, including calling him a Nazi.
28. Defendant Chayrez told Plaintiff to remove his belt which had native American symbols on it.
29. As Plaintiff was removing the belt, Defendant Chayrez pushed him against a back wall.
30. Defendant Chayrez then proceeded to attack Plaintiff as he was moving from a wheelchair to the bed in his cell.
31. Defendant Chayrez, who weighed more than 300 pounds, punched Plaintiff in the chest and then stomped on him while calling him a "Nazi."
32. Plaintiff protested that he wasn't a "Nazi" but that he was in fact wearing jewelry with traditional Navajo symbols that resembled Nazi symbols.
33. At one point, Chayrez threw a huge pair of underwear at Plaintiff and said, "you fucking Nazis have such big balls!"
34. Defendant Chayrez continued pursuing and pushing Plaintiff, and Plaintiff managed to curl up in the fetal position on his cot in an to attempt to protect himself.
35. Defendant Chayrez continued brutally attacking Plaintiff and stomping on him.
36. Chayrez left the booking cell at least twice and returned to continue attacking Plaintiff.
37. When Chayrez finally stopped attacking Plaintiff, he left him in a heap, unable to move.

38. Plaintiff was bruised and battered from his head to his ankles and was without his prosthetic leg.
39. Plaintiff later requested his medication as well as a pillow which he needed in order to prop up his right leg to sleep, and Chayrez denied him a pillow and stomped on him again.
40. Later that night, Plaintiff asked Defendant Chayrez for his prosthesis, but Chayrez did not bring it to him.
41. The following day, Plaintiff asked a female correctional officer on the day shift for his prosthesis and she also declined to return it.
42. The prosthesis was not returned to Plaintiff until he left the jail after two and a half days.
43. Plaintiff reported to employees of Defendant Board, including Chayrez, as well as to employees of Corrhealth, that he was prescribed five different prescription medications which he needed: Morphine, Gabapentin, Percocet, Synthroid and Zofran, and gave Corrhealth personnel his physician's name and contact information.
44. Corrhealth personnel and employees of Defendant Board made no efforts to obtain Plaintiff's prescription medications but instead forced him to go through a painful, dangerous and anxiety-inducing detoxification from his prescription drugs.
45. Corrhealth defendants completed a Clinical Opiate Withdrawal Scale (COWS) form compiling Plaintiff's reactions to the denial of his medications over the course of his time in custody.
46. On April 28, 2022, Nurse Adreyanna Poor documented that she had verified Plaintiff's prescription medications but still had not obtained and administered them.
47. On April 28, 2020 at noon, a nurse, Adreyeanna Poor, noted that Plaintiff was "not coherent."
48. Other medical records on that day describe him as anxious, unable to sit and nauseous.

49. On April 28, 2019, at 6:10 pm, an employee of Defendant Board noted that Plaintiff was "shaking and going threw [sic] bad detox."

50. Plaintiff also vomited, which was captured on video, likely due to the denial of Plaintiff's prescriptions medications, pain and shock due to the beating by Chayrez, or both.

51. Plaintiff was likely suffering from the physiological effects of withdrawal, including but not limited to drug cravings, irritability, depression, lethargy, and gastric distress.

52. As a result, and rather than obtaining or ordering Plaintiff's prescriptions, Corrhealth employee Nurse Practitioner Pamela Amparano ordered a prescription for Ondansetron HCL for Plaintiff's nausea.

53. On April 29, 2019, Plaintiff told Corrhealth employee, Nurse Brittney Haley, that he had been at LCDC for several days and had been denied his prescription medications.

54. Corrhealth employees continued to do nothing to rectify this problem instead leaving Plaintiff to suffer.

55. On April 29, Corrhealth staff verified that Plaintiff had current prescriptions for the five medications he had previously listed.

56. Plaintiff never received his medication or any replacement during his time at LCDC.

57. Without the morphine and Percocet, Plaintiff experienced severe pain in his hip and back.

58. This pain was far worse as a result of Chayrez's abuse.

59. With the exception of a trip to court, Plaintiff never left the booking cell at the jail.

60. Defendant Board's staff kept him there despite the fact that the cell was not designed to house inmates for a prolonged time.

61. Plaintiff was unable to ambulate to the bathroom and employees of Defendant Board and Corrhealth did not assist him in doing so, meaning that he was forced to urinate and defecate in his pants.

62. County and Corrhealth staff did not clean the vomit, urine and feces off of Plaintiff at any time while he was in custody.

63. Plaintiff was never extradited on the misdemeanor warrant on which he was arrested, and Plaintiff was ultimately released from LCDC at about 2:00 p.m. on Monday, April 29, 2019, after approximately 86 hours without his medication.

64. He finally received his prosthesis from staff of Defendant Board but was forced to jam it on quickly as staff did not permit him the time to do it properly.

65. As a result, the prosthesis was seated incorrectly, causing pain and discomfort.

66. A sheriff's deputy dropped Plaintiff off at a gas station in Deming leaving him no transportation to get back to his home in Silver City.

67. At the time of his release, Plaintiff smelled of feces and vomit because he had been unable to use the toilet at the jail.

68. On May 1, 2019, Plaintiff saw his primary care physician who observed that Plaintiff was fearful, distressed and shaking at the appointment.

69. His physician observed and documented that Plaintiff had healing bruises on his chest and right thigh and that those areas were quite tender, that Plaintiff's right leg had a large contusion and was very swollen and that swelling extended into his calf continuing after his release.

70. Plaintiff's physician further observed and documented that there was a breakdown of the lateral leg of Plaintiff's prosthesis at his left thigh.

71. This injury resulted from the fact that Plaintiff wasn't given time to get his prosthesis properly attached at the time of his release and was forced to walk with it improperly seated on the stump.

72. As a result of the abuse by Defendant Chayrez, Plaintiff was forced to use a cane or crutches and suffered and continues to suffer injuries to his neck and the back of his head, his right hand and right shoulder and to his hips.

73. Plaintiff also sustained a neck fracture which was observed or documented by magnetic resonance imaging ("MRI") in December, 2019.

74. As a result of the physical abuse by Defendant Chayrez, Plaintiff suffered and continues to suffer substantial anxiety, fear and paranoia, stress, and depression as well as nightmares and insomnia.

### COUNT I: VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT FOR INHUMANE CONDITIONS OF CONFINEMENT AND EXCESSIVE FORCE
### (DEFENDANT FABIAN CHAYREZ)

75. Plaintiff restates each of the preceding allegations as if fully stated herein.

76. Plaintiff has substantive due process rights under the Fourteenth Amendment to humane conditions of confinement, adequate medical care and not to be subjected to excessive force.

77. Defendant Chayrez confiscated Plaintiff's prosthetic leg, which he needed to ambulate and refused to return it while he was in custody at LCDC.

78. Defendant Chayrez held Plaintiff under inhumane conditions in order to deprive Plaintiff of necessary services and adequate medical care.

79. Plaintiff's conditions of confinement deprived him of basic necessities and were so grossly inadequate as to constitute punishment

80. Defendant Chayrez purposely and knowingly stomped on Plaintiff in order to seriously injure and punish him in a manner that was objectively unreasonable in violation of the Fourteenth Amendment.

81. At no time did Plaintiff pose a threat to Defendant or a security risk to anyone at the jail. Defendant's abuse of Plaintiff was entirely unreasonable given Plaintiff's conduct.

82. Defendant's abuse resulted in serious injuries to Plaintiff.

83. Defendant Chayrez abused Plaintiff in order to punish him.

84. Plaintiff's conditions of confinement amounted to punishment of a pre-trial detainee in violation of the Fourteenth Amendment to the United States Constitution.

85. Judged by contemporary standards of decency, the conditions of Plaintiff's confinement by Defendant involved the wanton and unnecessary infliction of pain, were grossly disproportionate to the severity of his crimes and entailed serious deprivation of basic human needs.

86. Defendant's actions were intentional, malicious, sadistic, willful, wanton, obdurate and in gross and reckless disregard of Plaintiff's constitutional rights.

87. Defendant's actions proximately caused Plaintiff's damages and injuries, which include pain and suffering and psychological and emotional distress.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendant Chayrez, together with an award of attorney's fees and costs.

## COUNT II:
## BATTERY
## (DEFENDANT CHAYREZ)

88. Plaintiff restates each of the preceding allegations as if fully stated herein.

89. Defendant Chayrez caused and intended to cause harmful and offensive contact to Plaintiff when he pushed him and stomped on him.

WHEREFORE, Plaintiff requests compensatory damages against Defendant Chayrez.

## **COUNT III:**
## **NEGLIGENT OPERATION OF A MEDICAL FACILITY**
## **(DEFENDANTS BOARD AND CORRHEALTH)**

90. Plaintiff restates each of the preceding allegations as if fully stated herein.

91. Pursuant to NMSA 1978, § 41-4-9, Defendant Board's governmental immunity from suit is waived for liability for damages resulting from bodily injury and wrongful death "caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities."

92. At all material times, Defendants acted through their respective employees including, but not limited to, administrators, managers, correctional officers, and other staff in the operation of the medical facilities and services for inmates at LCDC.

93. At all times material, these employees acted in the scope of their duties as public employees in the operation of the medical facilities and services to inmates at LCDC.

94. The employees of Defendants owed Plaintiff a duty to provide adequate medical care in their operation of LCDC's medical facilities and services to inmates at LCDC.

95. The employees of Defendants breached their duties to Plaintiff, inter alia, by denying him his prescribed medications, denying him his prosthetic leg, and forcing him to detox from his prescribed painkillers.

96. Defendants are liable under a theory of *respondeat superior* for the acts and omissions alleged herein of their officers, directors and other employees committed within the scope of their duties as public employees.

97. The actions and omissions of Defendants' employees proximately caused personal injury to Plaintiff, including pain and suffering and emotional distress.

WHEREFORE Plaintiff seeks an award of compensatory damages against Defendants.

**COUNT IV:**
**MEDICAL NEGLIGENCE**
**(DEFENDANTS CORRHEALTH)**

98. Plaintiffs restate each of the preceding allegations as if fully stated herein.

99. With respect to their care and treatment of Plaintiff, Defendant Corrhealth and its employees, owed Plaintiff a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected for physicians and other medical providers in similar situations.

100. By denying Plaintiff his prosthesis and denying him his medications and instead forcing him to detox, Defendant Corrhealth and its employees forced Plaintiff to suffer pain, anxiety, distress and disability.

101. Corrhealth's employees and agents should have provided Plaintiff with his prescription medications and his prosthesis and should not have forced him to undergo "detox" from his pain medications.

102. The decisions to deny Plaintiff his prosthesis and to force him to undergo "detox" fell below the applicable standard of care ordinarily used by providers practicing under similar circumstances, giving due consideration to the locality involved.

103. As a direct and proximate result of the medical negligence by Defendant Corrhealth alleged herein, Plaintiff experienced pain and suffering and emotional distress.

104. Defendant Corrhealth is liable under a theory of respondeat superior for the acts and omissions alleged herein of its employees and agents committed within the scope of their employment.

WHEREFORE Plaintiff seeks an award of compensatory damages against Defendants.

## JURY DEMAND

105. Plaintiff hereby demands a jury on all claims so triable.

Respectfully Submitted,

Marshall J. Ray
Law Offices of Marshall J. Ray
514 Marble Ave NW
Albuquerque, NM 87102
(505) 312-7598

&

JUSTINE FOX-YOUNG, P.C.

*/s/ Justine Fox-Young*
JUSTINE FOX-YOUNG
5501 Eagle Rock Ave. NE, Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com

I hereby certify that I have
delivered a copy of the foregoing
pleading to opposing counsel
of record this 25th day of
April, 2022.


By: */s/ Justine Fox-Young*
    Justine Fox-Young